## THE CITIZENS' BANK v. NICOLAS et al.

Under the stat. of 1st April, 1833, incorporating the Citizens' Bank, that bank was authorised
to take mortgages to secure the repayment of stock-loans made by it.
Where a mortgage was executed to secure the price of bank-stock subscribed for by the
mortgagor under the provisions of a bank charter which declared that each stock-holder
should be entitled on certain conditions to a loan to the amount of one half of his stock, the
mortgage stipulating that the mortgaged property shall stand hypothecated for any stock-
loan so to be made, it will not be declared void on the ground of its not being in compliance
with art. 3277 of the Civil Code, which requires that the exact sum for which a mortgage
is given shall be stated in the act.

APPEAL from the District Court of Lafourche Interior, *Randall*, J.
The facts of this case are stated in the opinion *infrâ*.

*C. A. Johnson*, for the plaintiffs.   It is contended by the intervenor that the
mortgage to secure the stock loan is null, because the amount intended to be
secured is not mentioned in the act of mortgage.   In reply to this, we say that
the charter fixes the amount of the credit to which each stockholder is entitled,
and this, being matter of public law, the public was notified of it without its inser-
tion in the act of mortgage.   The latter informed the world that the mortgagor
was a stockholder of a given number of shares of stock; and the law did the rest.
It is not material that the act did not state to what extent the stockholder intend-
ed to use this credit; the world were notified to what extent it *might* be used.
The *maximum* of prior encumbrances was clearly made known to subsequent
creditors.   The court cannot fail to remark the analogy of this case to that of
a mortgage to secure endorsements, provided for by our Civil Code.   All that
the law requires is, that the maximum to which the endorsements may reach
should be stated; and this is all that the reason of the rule requires.   But the
intervenor says that, the terms of our act of mortgage do not restrict the mort-
gage to *stock loans*, but speaks of *all loans* that the mortgaging party might
thereafter obtain from the bank.   We do not claim for the mortgage any such
extent as this.   We do not seek to avail ourselves of it for any loan but the stock
loan, which is clearly included.   We are at loss to conceive how the language
of the act, by being broader than the law warranted, can prejudice us in that
which we are clearly authorised to claim.

*Sigur* and *Bonford*, for the intervenor.   Art. 3277 of the Civil Code provides
that, in order to render a conventional mortgage valid, the exact sum for which
it is given *shall be declared in the act.*   A mortgage, like any other instrument,
may contain separate and distinct obligations separately secured.   In the one
we are considering, the mortgagees acknowledge that they owe $26,400 for
264 shares of the capital stock of the bank, and mortgage property for its pay-
ment; so far then as this obligation is concerned, the same is sufficiently set
forth in the act.   But, in addition to this, they declare that they mortgage to

<div style="float:right">

CITIZENS BANK
*v.*
NICOLAS.

</div>

secure whatever loans they may make from the bank; what is the sum secured by the stipulation?  *There is none declared in the act.*  Whether these loans shall amount to ten, twenty, or thirty thousand dollars, we search the act in vain to discover.  In the case of *Linton* v. *Purdon*, 9 Rob. R. 483, there was a sum mentioned in the act of mortgage, but it plainly applied as in this case, to a separate obligation secured in the same act; and the court held that the requisites of the Code had not been complied with.  It is of the highest importance that subsequent creditors and alienees should be able to ascertain from the mortgage act itself, to what extent property is encumbered.

In the french system, as in ours, a mortgage may be given for a future or conditional obligation.  But where, as in this case, the mortgage is to take effect on a condition *potestative* on the part of the debtor, all the authorities agree that the mortgage vests only from the date of the happening of the condition.  See Code Napoléon, art. 2125.   Troplong, Hypothèque, 1st vol. no. 478.  Merlin, Repertoire, Vo. Hypothèque, secs. 1 and 4.   So by art. 2132 of the same Code, it is necessary that the sum should be certain and determined in the act, though where the obligation is conditional the creditor may preserve his inscription by an estimated valuation, to be settled between him and his debtor.   This qualification is not contained in our Code.

It is argued on the part of the bank, in reply to the objection that no determinate sum of loan is mentioned in the act of mortgage that, a reference to the charter would show the precise sum the parties were entitled to borrow.   To this we rejoin, that this does not meet the requirement of the law, which is that the sum be declared in the act; secondly, that a reference to the charter would show nothing more than that the stockholder is entitled to borrow up to one half of his stock as a stock loan, but it does not show to what extent he intends to make use of that privilege; and lastly that nothing is said in the mortgage act confining it to stockloans; it is said to be given to secure *all* loans the parties may make—an expression which, at least, must be held to refer to other loans besides stock loans, inasmuch as stockholders have the same right as other individuals to borrow upon the mortgage to any indefinite extent.

*Beatty*, for the defendant.

The judgment of the court was pronounced by

ROST, J.  The plaintiffs sue for the amount of a stock loan made under the provisions of their charter, and pray that the property mortgaged to secure the stock, which is also mortgaged for the loan, be seized in the hands of a third possessor, and sold to satisfy the judgment.*  The defendants have not made a serious defence, but the third possessor has intervened, and opposes the claim:

---

*The 11th sec. of the stat. of 1 April, 1833, incorporating the Citizens' Bank, provides: "That every stockholder in the said corporation, on depositing and pledging his certificate of stock, shall be entitled to a credit equal to one half of the total amount of his stock."

The act of mortgage recites that the mortgagees " ayant souscrit pour deux cent soixante-quatre actions de cent piastres chacune, formant ensemble la somme de vingt six mille quatre cents piastres au fonds capital de la Banque des Citoyens de la Louisiane, incorporée par un acte de la législature, approuvé le premier avril mil huit-cent trente trois ; Eux les dites comparants se reconnaissent, par ces présentes, débiteurs conjoints et solidaires envers la dite banque de la somme de vingt six mille quatre-cents piastres, montant des dites actions ; et en garantie de leurs actions au fonds capital de la dite banque, ainsi qu'en garantie du paiement du capital et des intérêts de l'emprunt qui doit être levé pour former le capital de la dite banque, pour l'émission d'obligations ou bons qui doivent être signés par le président et contre-signés par le caissier de la dite banque, ils affectent et hypothèquent conjointement et solidairement par ces présentes, en faveur de la dite Banque des Citoyens de la Louisiane les propriétés suivantes: &c.  Lesquelles propriétés resteront ainsi hypothéquées jusqu'au paiement final, et jusqu'au rachat de tous les dits bons en capital et intérêts, ou jusqu'à ce que les dits comparants aient payé le montant de leurs actions et qu'ils aient remboursé l'emprunt qu'ils pourront avoir obtenu, a moins qu'ils n'aient auparavant transferé leurs actions, et qu'ils n'aient été entièrement déchargés par la dite banque.  Les dits comparants consentent à ce que la présente obligation hypothécaire, donnée par eux en garantie des dites actions et de tous prets qu'ils pourront avoir obtenus de la dite banque, portent intérêts a raison de dix pour cent par an après l'échéance, s'ils n'étaient point ponctuellement acquittés, et à ce que les propriétés ci-dessus décrites demeurent également hypothéquées en garantie du paiement des dits intérêts éventuels," &c.

CITIZENS BANK
v.
NICOLAS.

of the plaintiffs on the following grounds: 1st, That the parties who mortgaged the property to the bank were not the true owners thereof, and held it under a simulated sale from one Joseph Nicolas, who had made the transfer in fraud of the intervenor, to the knowledge of the plaintiffs. 2nd, That the bank could not legally take a mortgage to secure a stock loan, there being no power to that effect conferred by its charter. 3rd, That the mortgage is a nullity, because the amount of the loan intended to be secured by it is nowhere mentioned in the act. There was judgment in favor of the plaintiffs against the defendants and the intervenor, and in favor of one of the defendants against the intervenor, under warrnty of the latter. From these judgments the intervenor appealed. It is proved that the sale made by Joseph Nicolas was originally intended as a power to the purchasers to subscribe for stock in the Union Bank, the vendor being at the time the cashier of one of its branches, and incapable as such to become a stockholder. The power was used to subscribe for stock in the Citizens' Bank, and the property was subsequently retransferred to Joseph Nicolas, in whose possession it was seized and sold under a judgment of the intervenor, who acquired it subject to the mortgages of the bank. In the sale made to him by the sheriff, he binds himself to pay and satisfy " all privileges and mortgages prior to his own, the said privileges and mortgages to be unaffected by the adjudication." It is in evidence that the proceeds of the stock loan were either received by Joseph Nicolas, or applied to the payment of his liabilities. The intervenor has failed to show that he was a creditor of Joseph Nicholas at the time of the sale, and that the plaintiffs were apprised of the real character of the transaction. Had these allegations been proved, it is not perceived how they could avail him in this suit. The plaintiffs were not creditors of Joseph Nicolas. They gave in money the full consideration of the mortgages they took, and we should judge from the results that they had a hard bargain. The situation of the intervenor was certainly not made worse by the operation; he continued to deal with Joseph Nicolas as before, and in such a manner as satisfies us that he was aware of what had taken place, and approved of it. He purchased the property with the full knowledge of the claims of the bank, and expressly assumed to satisfy them, and retained for that purpose the whole amount of the adjudication. A question so free from difficulty is seldom presented to a court of justice.

The other two grounds taken by the intervenor, were passed upon by this court in the case of the *Union Bank* v. *Grice*, 2 Ann. Rep. 249, and determined in favor of the bank. No argument has been urged at all affecting the reasons upon which that decision rests.

Under the stipulation of the intervenor to pay and satisfy all mortgages prior to his own, *Jean Omer Nicolas*, one of the parties who subscribed for the stock, and against whom a personal judgment has been rendered in this suit for three fourths of the claim, has obtained a judgment against the said intervenor for the whole amount thereof. This is an error. The same judgment should have been rendered in his favor under that stipulation, as was rendered against him in favor of the bank. In that respect the judgment must be changed.

It is therefore ordered that the judgment rendered in favor of the plaintiffs be affirmed. It is further ordered, that the judgment rendered in favor of the defendant, *Jean Omer Nicolas*, against the intervenor, be reversed, and that the said *Jean Omer Nicolas* have judgment against the said intervenor for three fourths of the amount of the judgment rendered in favor of the plaintiffs, with a stay

of execution for ninety days; this judgment to stand as an indemnity for the judgment obtained by the plaintiffs against *Jean Omer Nicolas*, and to be of no effect so far as that judgment is satisfied by the sale of the property mortgaged, or by the intervenor himself; the intervenor to pay the costs of the court below, and those of the appeal to be paid in equal shares by him and *Jean Omer Nicolas*.

<div align="right">Citizens Rank<br>*v.*<br>Nicolas.</div>

<div align="right">3 115<br>46 439</div>